# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SHEILA G. HANCOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09CV87 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Sheila G. Hancock, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision by Defendant denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The Court has before it the certified administrative record and the parties have filed cross-motions for judgment.

## PROCEDURAL HISTORY

Plaintiff applied for DIB on March 14, 2006 (protective filing date March 6, 2006), alleging a disability onset date of June 30, 2005. (Tr. 63.)[1] Her application was denied initially and upon reconsideration. (Tr. 32-35, 37-39.) Plaintiff then requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 43), which she and her attorney attended on October 23, 2007 (Tr. 10). The ALJ ultimately determined that Plaintiff was not

---

[1] Transcript citations refer to the administrative record.

disabled within the meaning of the Act (Tr. 17) and, on December 11, 2008, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion Defendant's final decision for purposes of judicial review (Tr. 2-4).

In rendering his disability determination, the ALJ made the following findings later adopted by Defendant:

> 1.  The claimant last met the insured status requirements of the Social Security Act on June 30, 2006.
>
> 2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 30, 2005 through her date last insured of June 30, 2006 (20 CFR 404.1520(b) and 404.1571 et seq.).
>
> 3.  Through the date last insured, the claimant had the following severe impairment: back problems, status-post surgery times two (20 CFR 404.1520(c)).
>
> .  .  .  .
>
> 4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5.  After careful evaluation of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of sedentary work.

(Tr. 12, 14.)

In light of the above findings regarding residual functional capacity ("RFC"), the ALJ determined that Plaintiff could not perform her past relevant work as a paper carrier. (Tr. 16.) He further deemed transferability of job skills not an issue in the case, but added that Plaintiff had a high school education and the ability to communicate in English. (Id.) Finally, because

-2-

Plaintiff was 49 years old on her alleged onset date, the ALJ noted that she was regulatorily defined as "a younger individual age 18-49." (See id. (citing 20 C.F.R. §§ 404.1563 and 416.963).) Based on these factors and Plaintiff's RFC, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Id. (citing 20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), and 416.966).) Accordingly, the ALJ determined that Plaintiff was not under a "disability," as defined in the Act, from her alleged onset date of June 30, 2005, through the date of the decision. (Tr. 17.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting

-3-

<u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting the issue so framed, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to

-4-

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating long-standing medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This process has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec.

---

[2] "The Social Security Act comprises two disability benefits programs. The [DIB] Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

-5-

<u>Admin.</u>, 174 F.3d 473, 475 n.2 (1999).[3]  A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." <u>Mastro</u>, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." <u>Id.</u> at 179.[4]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant

---

[3] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ." <u>Hunter</u>, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." <u>Hines</u>, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." <u>Hall</u>, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (<u>e.g.</u>, pain)." <u>Hines</u>, 453 F.3d at 562-63.

-6-

work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## Assignments of Error

In the present case, the ALJ found that Plaintiff, who was not working, met her burden at step one of the sequential evaluation process ("SEP"). (Tr. 12.) At step two, the ALJ further determined that Plaintiff suffered from only one severe impairment: "back problems, status-post surgery times two." (Tr. 12.) Although the ALJ decided at step three that this impairment failed to satisfy a disability listing, he concluded upon formulating

_____

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the sequential nature of the five-step disability evaluation appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

Plaintiff's RFC that she was limited to sedentary work, such that she could not return to her past relevant work as provided at step four of the analysis. (Tr. 16.) The ALJ then ultimately found at step five, that, given Plaintiff's age, education, work experience, and ability to undertake a full range of sedentary work, she could perform other jobs available in the community and therefore did not qualify as disabled. (Tr. 17.)

Plaintiff argues that substantial evidence fails to support the Commissioner's findings at steps two and three of the SEP and in the formulation of the RFC. Specifically, she contends that the ALJ erred by failing (1) to classify Plaintiff's depression, gout, and knee pain as severe impairments (Docket Entry 8 at 3-8; Docket Entry 24 at 4-6), (2) to find that Plaintiff's severe back impairment met the requirements of Listing 1.04 (Docket Entry 24 at 1-3), (3) to "discuss or consider the side effects from the claimant's many medications on her ability to work as required under 20 C.F.R. § 404.15299(c)(3)(iv)" (Docket Entry 8 at 8-9), and (4) to "provide any analysis, other than the recitation of two medical appointments, as to the Plaintiff's credibility as he was required to do under 20 C.F.R. 404.1529" (id. at 2-3; see also Docket Entry 24 at 6-7).[6] Defendant contends otherwise and urges

_____

[6] Plaintiff's original counsel left the active practice of law after briefing, but before resolution of Plaintiff's case. (See Docket Entry 16.) Thereafter, the Court granted Plaintiff's new counsel leave to file a supplemental brief. (See Docket Entry 22.) This Recommendation therefore addresses the claims set out in both relevant briefs (Docket Entries 8, 24).

that substantial evidence supports the ALJ's disability determination. (Docket Entry 11 at 4-19; Docket Entry 27 at 1-8.)

## 1. Severe impairments

At step two of the SEP, the ALJ identified Plaintiff's back problems as her only severe impairment. (See Tr. 12.) According to Plaintiff, the ALJ "commit[ted] prejudicial error by failing to classify the Plaintiff's mental impairment of depression as a severe impairment" (Docket Entry 8 at 3) and "by not finding gout and knee pain to be severe impairments" (Docket Entry 24 at 4). Plaintiff has failed to show any reversible error in this regard.

The applicable regulation defines a "severe" impairment as "any impairment or combination of impairments which <u>significantly</u> limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (emphasis added). Such "basic work activities" include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). Plaintiff bears the burden of proving severity. See Hunter, 993 F.2d at 35 ("Through the fourth step,

the burden of production and proof is on the claimant.").[7]

Moreover, Plaintiff must make this severity showing with relevant medical evidence. See 20 C.F.R. 404.1512(c) (providing that claimant "must provide medical evidence showing . . . how severe [claimed impairment] is"); see also Robinson v. Astrue, No. 1:07CV871, 2010 WL 1872850, at *3-5 (M.D.N.C. May 6, 2010) (unpublished) (Dixon, M.J.) (recommending affirmance of ALJ's denial of benefits at step two, where "Plaintiff's medical records fail to reveal that Plaintiff's complaints [regarding claimed impairments] . . . significantly limited her physical or mental abilities to perform basic work activities"), recommendation adopted, slip op. (M.D.N.C. June 7, 2010) (Schroeder, J.). As another court has stated:

> The determination at step two is based on medical factors alone. Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003). A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled. 20 C.F.R. § 404.1512(c). The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists. 20 C.F.R. § 404.1513(a). A claimant's statements regarding the severity of an impairment is not sufficient. Adame v. Apfel, 2000 WL 422341 at *3-4 (D. Kan. March 20, 2000); Flint v. Sullivan, 743 F. Supp. 777, 782 (D. Kan. 1990).

---

[7] "Ordinarily, this is not a difficult hurdle for the claimant to clear: '[A]n impairment can be considered as "not severe" only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" Albright, 174 F.3d at 474 n.1 (quoting Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984)).

Rivas v. Barnhart, No. 05-1266 MLB, 2006 WL 4046153, at *4 (D. Kan. Aug. 16, 2006) (unpublished).

Here, Plaintiff has identified some medical support for her claims of depression. (See Docket Entry 8 at 4-8 (citing evidence from Dr. W.H. Perkins (a non-examining physician), Dr. Richard E. Herrick (a treating physician), and Mr. Donald Holland (a treating licensed therapist)).) This evidence, however, does not bear the weight she asks the Court to place upon it.

As an initial matter, "[t]o qualify for DIB, [a claimant] must prove that she became disabled prior to the expiration of her insured status." Johnson v. Barnhart, 434 F.3d 650, 655-56 (4th Cir. 2005) (citing 42 U.S.C. § 423(a)(1)(A) and (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a) (2005)). At most, "[r]ecords and medical opinions from outside the insured period can only be used in 'helping to elucidate a medical condition during the time for which benefits might be rewarded.'" Bannister v. Astrue, 730 F. Supp. 2d 946, 951 (S.D. Iowa 2010) (quoting Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006)). Plaintiff "last met the insured status requirements of the Social Security Act on June 30, 2006." (Tr. 12.) Dr. Herrick saw Plaintiff for the first time on October 19, 2007. (Tr. 538-40.) Plaintiff's therapy sessions with Mr. Holland took place in October and November of 2007. (Tr. 541-44.)

Evidence regarding such treatment thus could have relevance, if at all, only to the extent it "elucidates" Plaintiff's condition prior to June 30, 2006. Plaintiff, however, has not asserted, much

-11-

less shown, what, if anything, the records from Dr. Herrick and Mr. Holland regarding their treatment of Plaintiff beginning in October 2007 compelled the ALJ to conclude about the severity of Plaintiff's depression as of June 30, 2006. (See Docket Entry 8 at 6-8.) As a result, such records provide no basis for the Court to overturn the ALJ's determination that Plaintiff's depression failed to qualify as a "severe" impairment. See Johnson, 434 F.3d at 656 ("The March 26, 2002 assessment was submitted almost nine months after [the plaintiff's] last insured date of June 30, 2001. [The plaintiff] has made no argument that the disabilities contained in the assessment existed continuously from June 30, 2001 to the present, and there is no objective medical evidence that the impairments observed . . . in 2002 existed prior to June 30, 2001. Therefore, we find no merit to [the plaintiff's] argument that the ALJ failed to give proper weight to [the] 2002 assessments.").

Plaintiff also contends that the mental RFC assessment by Dr. Perkins required the ALJ to designate depression as a "severe" impairment. (See Docket Entry 8 at 4-6.) In fact, Dr. Perkins found, at most, that Plaintiff's depression caused moderate limitations in just six of 20 functional areas. (Tr. 257-59.) Plaintiff provides no support for her bald assertion that such limited findings would "significantly" impact her ability to perform basic work activities. (See Docket Entry 8 at 4-6.) Under

-12-

these circumstances, the Court should not conclude that Dr. Perkins' assessment mandated a finding of severe impairment.[8]

Plaintiff's arguments regarding the alleged severity of her gout also lack merit. According to Plaintiff, "the ALJ neglected to analyze the effect of [Plaintiff's] gout on her ability to work." (Docket Entry 24 at 4.) In fact, the ALJ acknowledged that, as of June 2006, Plaintiff experienced "persistent foot and toe pain." (Tr. 13.) However, Plaintiff's treating physician, Dr. Dan Andrews, "stated that [Plaintiff's] extremities were without edema and good pulses [were] present with no swelling of any joints present." (Id.) Further, the state agency physicians, who

_____

[8] Plaintiff's argument regarding Dr. Perkins' assessment also founders on another basic premise. Namely, the restrictions set forth by Dr. Perkins speak, not to whether Plaintiff's depression is severe, but to whether depression, regardless of its severity, might limit her ability to perform a full range of sedentary work. Review of the ALJ's finding at step two of the SEP, i.e., whether (based on medical evidence) a plaintiff's alleged impairments are medically severe, 20 C.F.R. §§ 404.1520(a)(4)(ii), differs from the question of whether the ALJ made a proper RFC assessment (relevant at steps four and five of the SEP), i.e., a determination of what a plaintiff can still do *despite* her impairments, see 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1). This latter finding takes non-medical evidence into account, as well as a plaintiff's non-severe impairments and their effect on her "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). Notably, for purposes of this case, courts "have not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation." Hoopai v. *Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007). Accordingly, substantial evidence supports the ALJ's determination that Plaintiff had the RFC to perform sedentary-level work.

considered Plaintiff's complete history of gout,[9] including intermittent pain, swelling, and instructions to elevate her left foot "as often and as long as possible to avoid excessive weight bearing" (Tr. 143), found that she could stand or walk for up to six hours per workday (Tr. 213, 236). Plaintiff thus has failed to show an absence of substantial evidence to support the ALJ's decision not to list gout as a severe impairment.

Similarly, the ALJ did not err in failing to categorize Plaintiff's knee pain as an additional severe impairment. Although the ALJ's decision only briefly mentions Plaintiff's history of right knee arthroscopy (Tr. 13) and her reports of her legs occasionally giving way (Tr. 15), a review of the record as a whole demonstrates no need for more extensive discussion. The physical RFC assessment by state agency physician Jolene Jean-Gracia specifically lists "leg problems" as a secondary diagnosis (Tr. 212), yet even taking Plaintiff's surgical history and continued pain and swelling into account, both Dr. Jean-Gracia and her fellow examiner nonetheless concluded that Plaintiff could perform medium exertional level work with occasional stooping and crouching. (Tr. 219, 236.) In sum, nothing in the record compelled the ALJ to identify Plaintiff's knee problems as a severe impairment.

---

[9] One of the two reviewing physicians, Dr. Jack N. Drummond, specifically listed Plaintiff's gout as a secondary diagnosis. (Tr. 235.) The other identified gout in an additional comments section. (Tr. 219.)

-14-

As a final matter, where, as here, an ALJ has determined that a plaintiff suffers from at least one severe impairment, any failure to categorize an additional impairment as severe generally cannot constitute reversible error. "According to the regulations, upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation." Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); accord Oldham v. Astrue, 509 F.3d 1254, 1256-57 (10th Cir. 2007); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Lauver v. Astrue, No. 2:08CV87, 2010 WL 1404767, at *4 (N.D.W. Va. Mar. 31, 2010) (unpublished); Washington v. Astrue, 698 F. Supp. 2d 562, 579-80 (D.S.C. 2010); Jones v. Astrue, No. 5:07CV452FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (unpublished). In this case, the ALJ found a severe impairment and proceeded with the SEP. Moreover, in formulating Plaintiff's RFC, the ALJ considered all of Plaintiff's limitations related to depression, gout, and knee problems (whether classified as severe or not). (See Tr. at 14-16.) As a result, any alleged improper application of law at step two caused Plaintiff no prejudice and thus provides no grounds for reversal. See Oldham, 509 F.3d at 1256-57; Lewis, 498 F.3d at 911; Maziarz, 837 F.2d at 244; Lauver, 2010 WL 1404767, at *4; Washington, 698 F. Supp. 2d at 579-80; Jones, 2009 WL 455414, at *2.

-15-

## 2. Listing 1.04

Plaintiff argues that, at step three of the SEP, the ALJ "did not properly evaluate [Plaintiff's] impairments against Disability Listing 1.04 for spinal impairments." (Docket Entry 24 at 1.) To satisfy that listing, a plaintiff first must show that she suffers from a spinal disorder such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture." 20 C.F.R. Part 404, Subpt. P, Appendix I, § 1.04. Second, she must demonstrate that the above spinal condition results in "compromise of a nerve root (including the cauda equina) or the spinal cord." Id. Lastly, she must show one of the following:

A.  Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

-16-

<u>Id.</u>  Plaintiff never specified which of the foregoing three subsections she allegedly met.  (<u>See</u> Docket Entry 24 at 1-4.) However, because Plaintiff's brief only discusses the requirements of subsection (A) and highlights no evidence supporting subsections (B) or (C) (<u>see</u> <u>id.</u>), the Court need address only Listing 1.04(A).

Defendant "does not dispute that Plaintiff has a limiting back condition or that she underwent surgeries (neucleoplasties)." (Docket Entry 27 at 2.)  Instead, Defendant argues that the record supports the ALJ's finding that Plaintiff's "condition fell short of the requirements for a listed impairment."  (<u>Id.</u>)  A review of the records in this case confirms Defendant's position.

Plaintiff's argument to the contrary focuses on two pieces of evidence from the record:  (1) physical therapy reports from May 2006 (Tr. 264-68) and (2) the results of an MRI on May 7, 2007 (Tr. 425).  (Docket Entry 24 at 2.)  She claims that these records, along with the results from her previous MRIs, demonstrate the existence of "degenerative changes at the L3-L4 level with encroachment on the neural foramina and exiting nerve roots bilaterally, compromising the nerve roots." (<u>Id.</u>)[10] Plaintiff also contends that earlier MRI results "showed mild to moderate central spinal stenosis, mild bulging of the L4-L5 intervertebral disc with left lateral recess stenosis and mild encroachment on the exiting nerve roots bilaterally at L4-L5."  (<u>Id.</u>)  Based on these

---

[10]  References to "L" and a number describe the five lumbar vertebrae.

assertions, Plaintiff argues that her back condition met Listing 1.04 prior to the expiration of her insured status. (Id. at 3-4.)

The evidence on which Plaintiff relies does not suffice to establish any error. As an initial matter, Plaintiff draws the bulk of her contentions directly from conclusory statements in physical therapy reports that lack support from within the record as a whole. In other words, although the reports from Plaintiff's treating physicians show degenerative disc disease at L4-L5 (see Tr. 173, 203), nothing in the medical records supports the physical therapist's account of nerve root or spinal cord compression.

In this regard, Plaintiff argues that her 2006 MRI showed "spinal canal stenosis as well as foraminal stenosis with compromise of the L3-L4 and L4-L5 nerve roots" and that "she has suffered from neuro-anatomical distribution of pain with bilateral lower extremity numbness, pain and weakness, as is expected with lumbar nerve root compromise." (Docket Entry 24 at 3.) This argument parrots the language of Listing 1.04, but the records cited for the underlying propositions simply fail to support them. The first cited record, an orthopaedic treatment note, reflects none of the above information and the second cited record again consists of unsubstantiated physical therapy notes. (See id. (citing Tr. 203-04, 264-68).) Plaintiff's reliance on her 2007 MRI is equally misplaced. To the extent Plaintiff argues that "evidence of disability subsequent to expiration of insured status can still be relevant in helping to explain the claimant's medical

-18-

condition during the time for which benefits might be awarded" (id. at 3),[11] the 2007 MRI result adds nothing to the analysis of Plaintiff's condition during the relevant time period as it merely confirms the stability of Plaintiff's condition as compared to her 2005 examination.  (Tr. 425.)

In sum, the record reflects that Plaintiff suffered from mild central canal and foraminal stenosis both during and after her insured period, but fails to show that she met the specific nerve compression requirements set out in Listing 1.04(A).  At a minimum, Plaintiff has not shown that the record lacks substantial evidence to support the ALJ's determination that Plaintiff failed to carry her burden of showing satisfaction of a listing at step three.  As such, Plaintiff's instant challenge cannot succeed.

**3.  Side effects**

Plaintiff next contends that, in formulating her RFC, the ALJ failed "to discuss or consider . . . Plaintiff's reported side effects from her many medications on her ability to work as required under 20 C.F.R. § 404.1529(c)(3)(iv)."  (Docket Entry 8 at 8.)  The cited provision specifically requires an ALJ to consider "[t]he type, dosage, effectiveness, and side effects of any medication [a claimant] take[s] or has taken to alleviate pain or other symptoms," 20 C.F.R. § 404.1529(c)(3)(iv), in the context of

_____

[11]  At most, "[r]ecords and medical opinions from outside the insured period can only be used in 'helping to elucidate a medical condition during the time for which benefits might be rewarded.'" Bannister, 730 F. Supp. 2d at 951 (quoting Cox, 471 F.3d at 907).

-19-

(1) evaluating the intensity and persistence of the claimant's symptoms and (2) determining the extent to which those symptoms limit the claimant's capacity for work, 20 C.F.R. § 404.1529(c)(1). Notably, in undertaking such an evaluation, an ALJ need not discuss each piece of available evidence, but instead may limit the written explanation to material matters. See, e.g., Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995).

Here, the record does not establish that the ALJ's decision should have discussed any side effects of Plaintiff's medication. Plaintiff's attorney asserted at her hearing that Plaintiff's depression requires her to remain "heavily medicated most of the time or substantially medicated most of the time." (Tr. 21.) However, on the very next page of the hearing transcript, Plaintiff indicated that she only began taking medication for her depression within a week of the hearing itself and that her dosage would decline. (Tr. 22.)[12] Moreover, Plaintiff stated that she "rarely uses pain medications because she does not like the way they make her feel." (Tr. 301.) Further, Plaintiff points to no medical evidence that her occasional drowsiness created additional limitations. (See Docket Entry 8 at 9.) "Drowsiness often

_____

[12] The medical records indicate that Plaintiff previously took a different antidepressant for a brief period nearly eighteen months prior to her hearing, but she discontinued it after developing a rash. (Tr. 289.) Plaintiff also expressed a general hesitancy to use antidepressants due to a history of visual hallucinations while on Prozac. (Tr. 295, 299-300, 539.)

-20-

accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations." Burns v. Barnhart, 312 F.3d 113, 131 (3d Cir. 2002), cited with approval in Johnson, 434 F.3d at 658. In the present case, the record reveals no such limitations. Plaintiff thus has failed to show that side effects from her medications should have factored into her RFC.

The evidence regarding Plaintiff's remaining medications does nothing to alter this conclusion. Plaintiff regularly takes Toprol XL and Lasix to manage her cardiac symptoms and Lipitor to lower her cholesterol. (Tr. 134-35.) She indicated muscle soreness and pain as side effects of Lipitor during at least one doctor's appointment (Tr. 507) and she reported fatigue from her Toprol use (Tr. 309). However, Plaintiff typically denied experiencing side effects during her doctor's appointments despite taking these medications daily for years. (Tr. 327, 333, 339, 343, 352, 358.) In addition, as was the case with Plaintiff's pain medications, the record fails to show that her reported side effects interfered with her daily activities at all, let alone altered her functional capacity beyond the scope of her existing back pain.

Under these circumstances, Plaintiff's instant assertion of error lacks merit.

## 4. Credibility

Finally, again in connection with the RFC formulation, Plaintiff challenges the ALJ's decision to decline to deem

Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms entirely credible. (See Docket Entry 8 at 9-11; Docket Entry 24 at 6-7.) In particular, Plaintiff claims that "the ALJ commit[ted] prejudicial error by failing to provide any analysis, other than the recitation of two medical appointments, as to the Plaintiff's credibility as he was required to do under 20 C.F.R. [§] 404.1529 (2009)." (Docket Entry 8 at 9.) Section 404.1529, as clarified in Social Security Ruling 96-7p and as applied by the Fourth Circuit in Craig, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statements about a claimant's reported symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. §§ 416.929(b) & 404.1529(b)). In the present case, Plaintiff experiences medically-documented back problems which one generally would expect to produce pain sufficient to reduce mobility, as she alleges. (See Tr. 12-13.)

Plaintiff's case thus hinges on the second part of the relevant test, which requires that,

> after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, . . . the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. See 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1). Under the regulations, this evaluation must take into account not only the claimant's statements

-22-

about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, see id.; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), see 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it, see 20 C.F.R. §§ 416.929(c)(3) & 404.1529(c)(3).

Craig, 76 F.3d at 595.

Here, Plaintiff contends that the ALJ failed to consider all of the relevant evidence in the record before concluding that Plaintiff's statements regarding her pain level were not entirely credible. (Docket Entry 8 at 9.) Plaintiff also argues that the ALJ "mischaracterized some of Plaintiff's testimony" when he described Plaintiff's daily activities. (Id. at 10.) A review of the record, including the hearing transcript, fails to substantiate these claims. Significantly, in evaluating a plaintiff's credibility, the ALJ has the responsibility to draw inferences from, and resolve conflicts in, the record. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (citing Smith v. Schweiker, 719 F.2d 723, 725 n.2 (4th Cir. 1984). When challenging an ALJ's exercise of that authority, a plaintiff must show that the ALJ either ignored crucial portions of the record or that his credibility finding was patently unreasonable given the evidence in the record. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Basu-Dugan v. Astrue, No. 1:06CV00007, 2008 WL 3413296, at

*6 (M.D.N.C. Aug. 8, 2008) (unpublished) (recommendation of Eliason, M.J., adopted by Schroeder, J.).

In this case, Plaintiff makes no such showing. The ALJ's decision specifically notes that Plaintiff "occasionally falls when [her] legs give way"[13] and that "she alleges she is up and down approximately every three hours [during the night] due to pain." (Tr. 15.) The plain language of the ALJ's decision thus reflects that he considered Plaintiff's statements regarding the intensity and persistence of her pain, as required by 20 C.F.R. § 404.1529(c). See Craig, 76 F.3d at 595. As noted above, however, an ALJ must only factor a claimant's statements into the disability determination "to the extent . . . [those statements] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).

A review of Plaintiff's medical records and daily activities summarized by the ALJ confirms the existence of substantial conflict between Plaintiff's statements regarding pain and other relevant evidence. For example, Plaintiff testified that she drives occasionally, reads, watches television, takes her dogs out, gets coffee, and "tr[ies] to piddle around the house and do things that needs [sic] to be done." (Tr. 15, 23-26.) She reported the same activities to her treating physicians, even during appointments where she claimed average pain levels between eight

---

[13] Plaintiff alleged during her hearing that she falls "[m]aybe once a month" due to leg and back pain. (Tr. 24.)

-24-

and ten on a ten-point scale, or in other words, the worst pain imaginable. (See, e.g., Tr. 292, 295, 298-99.) The medical appointments cited in the ALJ's decision reflect similar inconsistencies between Plaintiff's allegations of severe, disabling pain and unremarkable physical findings upon examination. (Tr. 15-16.) Nothing indicates that these appointments were chosen "at random," as Plaintiff suggests (Docket Entry 8 at 10; Docket Entry 24 at 6) or that they were wholly unrelated to her credibility. As for Plaintiff's additional argument that the ALJ "mischaracterized" her testimony by stating that she "cooks the meals" without noting her alleged inability to stand while cooking (Docket Entry 8 at 10), this omission alone fails to demonstrate that the ALJ ignored crucial portions of the record or that his credibility finding was patently unreasonable given the relevant evidence. The ALJ's credibility determination is supported by the evidence as a whole and is entitled to the Court's deference.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's motion to reverse the decision of the Commissioner (Docket Entry 7) be **DENIED**, that Defendant's motion for judgment on the pleadings (Docket Entry 10) be **GRANTED,** and that this action be dismissed with prejudice.

This the __16th__ day of April, 2012.

                              /s/ L. Patrick Auld
                              **L. Patrick Auld**
                    **United States Magistrate Judge**